**FILED**

JAN 1 1 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PACIFIC CENTURY INTERNATIONAL LTD,

      Plaintiff,

v.

JOHN DOES 1-31,

      Defendants.

_____/

CASE No. 1:11-CV-09064

Honorable Harry D. Leinenweber

## NOTICE OF DECLARATION TO REFUTE

To:    Paul Duffy
       Prenda Law Inc.
       161 N. Clark Street, Suite 3200
       Chicago, IL 60601

Please be advised the declaration of the undersigned shall be presented on January 18, 2012 at 9:30 a.m. before Judge Harry D. Leinenwebber or any Judge sitting in his stead, in Courtroom 1941, Chamber 1946, United States District Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn, Chicago, IL 60604, and shall thereupon present **DECLARATION TO REFUTE PLAINTIFF'S DECLARATION OF PETER HANSMEIER**, a true and correct copy of which is hereby served upon you through the US Postal Service.

Dated: 1/06/2012

                               Respectfully submitted,

                               John Doc

                               John Doe, AKA: DieTrollDie
                               *Blog:* http://dietrolldie.wordpress.com
                               *Doerayme2011@hotmail.com*



FILED

JAN 1 1 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PACIFIC CENTURY INTERNATIONAL     CASE No. 1:11-CV-09064
LTD,

      Plaintiff,

v.

JOHN DOES 1-31,

      Defendants.

_____/

## DECLARATION TO REFUTE PLAINTIFF'S DECLARATION OF PETER HANSMEIER

I, an anonymous John Doe, do hereby declare:

1. I'm over 18 years of age and competent to make this declaration.

2. I have personal knowledge of the facts in this declaration and Plaintiff's declaration from Peter Hansmeier, Media Copyright Group (MCG), LLC, filed on 22 Dec 11 (Document #5-2), concerning his technical analysis of this case in support of Plaintiff's motion for leave to take discovery prior to Rule 26(f) conference.

3. I have also filed four previous declarations (October, November, and December 2011) for cases in the Eastern District of Virginia (Richmond Division), *3:11-cv-00531-JAG (Patrick Collins v. Does 1-58), 3:11-cv-00469-JAG (K-Beech v. Does 1-85),* District of Arizona, *2:11-cv-01602-GMS (Patrick Collins v. Does 1-54)*, and the Northern District of Florida, *4:11-CV-00584 (Digital Sin, Inc., v. Does 1-145)* refuting Plaintiff's memorandums.

4. I'm filing this declaration anonymously, as I'm one of the 200,000+ John Doe defendants

in the multitude of copyright infringement cases filed throughout the U.S. If I were to file this declaration under true name, I feel I would be singled out for vindictive prosecution by my Plaintiff and the network of copyright infringement lawyers that file these types of cases. The case I was under has been dismissed, but like many other Doe defendants, I'm waiting for the statute of limitation to expire. The declarations I have previously filed, as well as the various motion-templates/examples I make available to Doe defendants on my Blog (*http://dietrolldie.wordpress.com/*), have caused copyright infringement lawyers more work and the doubtless loss of settlement fees. To prevent identification, I will be mailing this declaration to the court and Plaintiff from a State other than my own.

5. Plaintiff will likely claim I have no standing to make this declaration, as I'm not one of the Doe defendants in this case. I believe I do have standing and valuable information concerning the information Mr. Hansmeier provided the court. My standing is based on my direct knowledge of these types of cases and the operations of computer networks, to include small home/office networks, most (if not all) are what Plaintiff has listed as Doe defendants. I have gathered this knowledge first hand by working as a certified Information Technology Specialist, as a Doe defendant, and by running a Blog, dedicated to posting news and views concerning copyright infringement lawyers (AKA: Copyright Trolls) and John/Jane Does. My Blog can be viewed at *http://dietrolldie.wordpress.com/*. While running my Blog, I have corresponded with many Doe defendants who like myself, are being abused by the copyright infringement lawyers who follow this business model.

6. I hope my declaration will aid the Court in making a sound decision about the questionable practices of Plaintiff and other copyright infringement lawyers, to include the omissions by Mr. Hansmeier of key Internet Protocol (IP) Addresses information he (and Plaintiff) claim

are so indicative of Doe defendant guilt. I thank the court for indulging this John Doe.

7. Response to Peter Hansmeier's declaration, paragraph 12.

Mr. Hansmeier states he used "sophisticated and proprietary peer-to-peer network forensic software," to gather information against Doe defendants. There is no testament to accuracy of the software or if it has even been independently tested and/or accredited. If it is truly "forensic" in nature, the software and the technicians using it should abide by the Daubert Standard (*Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)*[1].

The Daubert Standard require the court to make a preliminary assessment of whether an expert's scientific testimony is based on reasoning or methodology that is scientifically valid and can properly be applied to the facts at issue. The following factors under Daubert may be considered in determining whether the methodology is valid:

> (1) Whether the theory or technique in question can be and has been tested
> (2) Whether it has been subjected to peer review and publication
> (3) Its known or potential error rate
> (4) The existence and maintenance of standards controlling its operation
> (5) Whether it has attracted widespread acceptance within a relevant scientific
community.
> (*http://www.law.cornell.edu/wex/daubert_standard*)

Based on Mr. Hansmeier's declaration, there is no indication that any of the above factors have been met to satisfy Daubert. It should also be noted that the technical qualification and/or certifications of Mr. Hansmeier have not been established or attested to regarding his use of this or any other forensic software or evidence handling/collection methods. The technical certifications of Mr. Hansmeier should be of particular concern to

---

[1] *http://www.law.cornell.edu/supct/html/92-102.ZS.html, Legal Information Institute, Cornell University Law School.*

the court, as he failed to provide the court the relevant information concerning the "Public" IP address MCG collected and its limitation in identifying alleged infringers (see section 8. below). Mr. Hansmeier stated he is prepared to testify to the truth and accuracy of the information he provided. I urge the court to accept Mr. Hansmier's offer so the court can make an informed decision regarding the use of his information prior to granting Plaintiff leave to take discovery. Even if Plaintiff states that Mr. Hansmeier is only a "fact witness" and not an "expert," the technical information concerning the proprietary software, the technicians running it, and its reliability is still highly relevant to this and other copyright infringement cases currently being pursued.

The Daubert Standard is relevant to this case at this juncture, as the declaration of Mr. Hansmeier is central to the complaint and will be used by the court to determine if a subpoena for Internet Service Provider (ISP) subscriber information is granted.

8. <u>Response to Peter Hansmeier's declaration, paragraphs 15. - 19.</u>

Mr. Hansmeier states even with their forensic software, he could still only associate it with the IP address assigned by the ISP. Mr. Hansmeier omits the relevant fact that for a majority of residences, there is only one "Public" IP address assigned to each residence. He also fails to mention the IP address MCG collected does not necessarily correlate to the actual copyright infringer.

The IP address MCG collected is only the Public IP address an ISP assigns to a subscriber's location for a specific date and time. As a majority of residential and small office networks utilize a Wireless (WiFi) Firewall/Router, the systems that connect to it are given an "Internal" IP address (by the WiFi Firewall/Router) that no one outside of the residential network will ever see. These WiFi Firewall/Routers allow multiple wired and

wireless connections from computers (some possibility unauthorized); all using the same Public IP address MCG has collected (Exhibit A). It is irresponsible for Mr. Hansmeier to infer that because he recorded the Public IP address, the ISP subscriber knowingly took part in the illegal download/sharing of a copyright protected movie, at least without making this possibility known to the court.

Two recent Federal court filings from named Doe defendants in a similar California copyright infringement cases (*3:11-cv-02766-MEJ, Patrick Collins v. Does 1-2590, Documents 22 and 52*), show how weak the Public IP address is in identifying the actual copyright infringers.

In document 22 (*3:11-cv-02766-MEJ*), Bobbie Thomas (ISP subscriber), Richmond, CA, tells the court she is a disabled female who lives with her adult daughter and several in-home care providers. The residence (location of the Public IP address) is a three-story building in which her daughter runs a child day care business for 12-hours a day. In the first floor common area, Mrs. Thomas' personal computer and Internet connection were open and available for any of the residents or anyone with access to use.

In document 52(*3:11-cv-02766-MEJ*), Steve Buchanan (ISP subscriber), Phoenix, AZ, tells the court that unknown personnel were abusing his Internet connection and his ISP had to help him re-secure his WiFi Router. Mr. Buchanan enlisted the help of his ISP after receiving notification from his ISP that copyright protected movies were being shared via his public IP address. Mr. Buchanan eventually secured his WiFi Router and determined the unknown personnel had also illegally accessed his wife's computer and prevented it from connecting to his network.

The unauthorized use of a home WiFi Internet connection led to one Buffalo, NY,

family to being investigated for allegedly downloading child pornography. On 7 March 2011, US Immigration and Customs (ICE) agents executed a search warrant for child pornography based only on the subscriber information (Public IP address) they received from the ISP. ICE later determined that a next-door neighbor had used the Internet connection via the WiFi router. [2]

In July 2011, Barry Ardolf, Minnesota, was convicted of hacking has neighbors (Matt and Bethany Kostolnik) WiFi router, trying to frame them with child pornography, sexual harassment, and even sending threading emails to Vice President Joe Biden. [3] Mr. Ardolf used freely available software and manuals to hack the Wired Equivalent Privacy (WEP) protecting the Kostolnik's WiFi router. Due to the threatening emails sent to the Vice President, the US Secret Service contacted Mr. Kostolnik based on the email and Public IP address. Mr. Kostolnik was eventually cleared of these allegations after it was determined Mr. Ardolf hacked their WiFi router. Mr. Ardolf was eventually sentenced to 18 years in prison (*case 0:10-cr-00159-DWF-FLN, USDC, District of Minnesota*). [4]

Examples of why the registered IP subscriber did not illegally download/share the copyright protected movie are:

a. Home WiFi access point run open (like at an airport or coffee bar) and abused by an unknown person.
b. Guest at the residence abusing the Internet connection without the owner knowing.
c. Neighbor connects (knowingly or unknowingly) to the network and the owner doesn't know of this activity.
d. IP address is part of a group residence (roommates), apartment building, or

---

[2] *http://www.huffingtonpost.com/2011/04/24/unsecured-wifi-child-pornography-innocent_n_852996.html*,
  *Innocent Man Accused of Child Pornography After Neighbor Pirates His WiFi, 24 Apr11.*
[3] *http://www.networkworld.com/news/2011/071311-wifi-hack.html*, "Depraved" Wi-Fi hacker gets 18 years in
  prison, *13 Jul 11.*
[4] *http://www.wired.com/images_blogs/threatlevel/2011/07/ardolffedssentencingmemo.pdf*, Government's Position
With Respect to Sentencing, 14 Jul 11.

small home business where a user (not the ISP subscriber) downloaded/shared copyright protected movie.

e. Home system infected by a Trojan Horse malware program and controlled by unknown personnel.

f. Unknown person hacks the WiFi security settings of the firewall/router to abuse the ISP subscriber's Internet connection.

Without additional investigative steps, innocent personnel are bound to be implicated in infringement activity and pressured to pay settle amounts to make the threat of a federal law suit go away.

One earlier court noted the problem with this strategy of only using the Public IP address to identify the alleged infringer:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants. *BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

Mr. Hansmeier states the Public IP addresses he identified all took part in the same transaction of illegally downloading/sharing Plaintiff's copyright protected movie (Document #1-1 of the complaint). Even though Mr. Hansmeier limited the time-frame of the Public IP address collection efforts to 9 November - 14 December 2011, there is no information to say ALL the Public IP addresses took part in the same swarm for entire 36 day period. If all the Doe defendants did not take part in the swarm for the entire period, then current joinder is inappropriate. It is more likely that the Public IP address associated with Doe defendant #1 shared the file with defendants 2-9. Doe defendant #4 may have then shared the file with defendants 10-16, and so on. MCG recorded Public IP address

71.194.75.149 as taking part in the swarm (Document #1-1 to the complaint) at 9 Nov 11, 05:46:03 Coordinated Universal Time (UTC). Public IP address 76.235.87.243 was observed taking part in the swarm at 14 Dec 11, 22:46:02 Coordinated Universal Time (UTC). There is nothing to show that these two Public IP addresses were ever part of the SAME swarm, only that they had once shared the same movie. Mr. Hansmeier does not show when each of the public IP addresses started and stopped sharing Plaintiff's movie, as well as what other Doe defendants they interacted with. This information is key to determining proper joinder of the Doe defendants.

In the January 2011 Technical Report: *An Estimate of Infringing Use of the Internet*, by *Envisional*[5] (a major company specializing in detecting and guarding against the threats of counterfeiting, piracy, fraud and online brand abuse), the following was noted for the single day analysis of BitTorrent use:

> For the 2.72 Million torrents identified, only .2% had 100 or more downloaders. 2.6% of the torrents had 10-99 downloaders. 51.9% of the torrents had from one to nine downloaders. 45.2% had no active downloads. Envisional also noted that a similar spread of "seeders" (users with a complete copy of the work) were associated with the torrents. For 48.5% of the torrents, there were no seeders connected. (Page 9)

This report clearly shows the vast majority of torrents only had zero to nine downloaders associated with them and a very limited number of file seeders at any one instance. Only 2.6% of the torrents had 10-99 downloaders and similar numbers of seeders at any one time.

The nature of BitTorrent is that a file is first made available to other BitTorrent

---

[5] http://documents.envisional.com/docs/Envisional-Internet_Usage-Jan2011.pdf

users by a small number, usually one public IP address. As other BitTorrent users join and start to download/share the work, the swarm grows. Depending on how popular the work is, the swarm can grow fast, or not at all. Eventually as the popularity of the shared work drops, the swarm shrinks, and eventually disappears. Public IP addresses from the U.S. and around the world commonly join and leave various BitTorrent swarms at all times during the life of the torrent. It is not unusual for some Public IP addresses to be attached to a swarm for less than a single day.

Discussions of the technical details of the BitTorrent protocol aside, the individual defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no claim that the movie MCG downloaded came jointly from specific Public IP addresses (Doe defendants). Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean well-established joinder principles need not be followed here. Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country.

9.   Response to Peter Hansmeier's declaration, paragraph 21.

Mr. Hansmeier states that without expedited discovery on the ISP, Plaintiff has no means of serving defendants with a complaint and summons and no means to protect its creative works. In the overall majority of the mass copyright infringement cases being filed in the U.S., the Plaintiffs have no intention of serving summons on defendants or even taking them to actual trial. I'm one of these defendants where my subscriber information

was released via a subpoena, settlement demands were made, I didn't settle, and Plaintiff

dismissed the case after keeping it open for more than a year. I was never named in any

complaint and never received a summons, even after repeated calls and letters stating they

were about to take such actions. In a recent order (1 December 2011), Judge Maria-Elena

James, Northern District of California (*case # 3:11-cv-02766-MEJ, Patrick Collins v. Does*

*1-2590*), commented on this practice.

> Since granting Plaintiff's request, a check of the Court's docket disclosed that no
> defendant has appeared and no proof of service has been filed. Further, the Court
> is aware that this case is but one of the many "mass copyright" cases to hit the
> dockets of federal district courts across the country in recent months. Like in this
> case, after filing the suit, the plaintiff seeks discovery from ISPs who possess sub-
> scriber information associated with each IP address. With the subscriber informa-
> tion in hand, the court is told, the plaintiff can proceed to name the defendants in
> the conventional manner and serve each defendant, so that the case may proceed
> to disposition. This disposition might take the form of settlement, summary judg-
> ment, or if necessary, trial. In most, if not all, of these cases, if the plaintiff is
> permitted the requested discovery, none of the Doe defendants are subsequently
> named in the cases; instead, the plaintiff's counsel sends settlement demand letters
> and the defendants are subsequently dismissed either by the Court or voluntarily
> by the plaintiff.

Two recent copyright infringement cases filed by Prenda Law Inc., in the District

of Washington DC, support Judge Maria-Elena James' view that there is no apparent

intention to take any of these cases to trial. In the following two cases, Prenda Law (Paul

Duffy) filed complaints and then shortly after voluntarily dismissed them, based apparently

on the Judge it was assigned to. Case *1:11-VC-02031, First Time Videos LTD v. John Does*

*1-541*, was initially filed on 15 Nov 2011, and dismissed by Prenda Law on 18 Nov 2011.

Case *1:11-CV-02176, Millennium TGA Inc. v. John Does 1-939*, was initially filed on 7 Dec

2011, and dismissed by Prenda Law on 16 Dec 2011. Both of these cases were assigned to

Judge Robert L. Wilkins, who previously denied expedited discovery requests on the mass

John Doe case *11-cv-00301, NU Image, Inc, v. John Does 1-23,322.*

10. Conclusion

      To provide the court more identifying information than the Public IP address, Plaintiff would have to do some type of investigation. It is much easier for them to collect Public IP addresses and seek a subpoena for the subscriber information. Once subscriber information is obtained, Plaintiff knows they are about to see the money come to them. As can be seen by the screen shots from an adult movie Webmaster board, "GFY.COM" (Exhibit B), an adult content copyright owner and a well-known copyright infringement lawyer post some information concerning their activities. The copyright infringement lawyer, John Steele (Steele|Hansmeier, PLLC; now of Prenda Law Inc., *who represents this Plaintiff*), posts that it does not cost the copyright owner any money to take this legal action with him. The copyright infringement lawyer handles all the costs up front and they split the profits from the operation. The copyright owner, "Robbie" (Robbie Boyette), states it is a 60/40 split in his favor and states "*Piracy is turning out to be a nice little revenue stream,*" as well as "*And it's padding my bank account.*" Robbie also states they set the settlement fee right at the point where it costs the Doe defendant more to fight than settle. A further disturbing point is made by Robbie that in addition to costing the Doe defendant more to fight, they will have the added bonus of "*your wife, kids, neighbors, co-workers, etc. finding out ALL your dirty little porn habits that you want to keep private.*" This clearly shows that the Plaintiffs and the copyright infringement lawyers care nothing about possibly implicating innocent people in these allegations. If Mr. Hansmeier and MSG admit their evidence collection methods are not 100% effective at identifying the actual infringers all the

time, they have to admit that some of the Doe defendants are innocent. As they will not do this and risk losing potential settlement fees, they threaten all the Doe defendants with a federal law suit for downloading/sharing copyright protected pornography. This threat of financial ruin, family and friend embarrassment, a convenient settlement option, and non-disclosure agreement, make it easy for even innocent people to possibly accept paying the settlement fee of a couple thousand dollars. If Plaintiff is able to obtain the settlement fee of $3,000.00 from 50% of the Doe defendants in this case, they will make approximately $46,000.00. This activity is part of Plaintiff's never-ending cycle of revenue generating law suits and non-disclosure settlement agreements. The fact that a majority of Federal civil cases are settled before trial should not be the justification basis for granting subpoenas against Doe defendants to obtain ISP subscriber information. Plaintiff and the growing number of copyright infringement lawyers are abusing the court for their financial gain.

### Suggestion to the Court

I make the balanced suggestion to the court that a limited form of a subpoena be granted to Plaintiff. This limited subpoena could instruct each ISP to immediately safeguard the subscriber information associated with the Public IP address identified by Mr. Hansmeier. While the subscriber information is being safeguarded, the court can interview Mr. Hansmeier regarding the nature of MCG's proprietary forensic software and his technical certifications. The court can also determine if joinder of ALL the Doe defendants in this case is appropriate based Mr. Hansmeier providing full details of the swarm participation dates/times for all the Public IP addresses. This information will help the court determine if subscriber information should be released to Plaintiff based on the existing information. I thank the court for hearing this declaration.

Dated: 1/06/2012                              Respectfully submitted,


                                              *John Doe*

                                              John Doe, AKA: DieTrollDie
                                              *Blog: http://dietrolldie.wordpress.com*
                                              *Doerayme2011@hotmail.com*

## CERTIFICATE OF SERVICE

I hereby certify that on 1/06/2012, I served a copy of the foregoing document, via US Mail, on:

**Prenda Law Inc.**
**Attn. Paul Duffy**
**161 N. Clark St., Suite 3200**
**Chicago, IL 60601**

Dated: 1/06/2012                                        Respectfully submitted,


John Doe, AKA: DieTrollDie
*Blog: http://dietrolldie.wordpress.com*
*Doerayme2011@hotmail.com*

# EXHIBIT A



# EXHIBIT B



story    Bookmarks    Tools    Help

Getting Started    Latest Headlines

htspeed, Grooby F... ×    XBIZ NEWS: Lightspeed, Grooby File... ×

http://gfy.com/showthread.php?s=433131d288384674276f86d48334i2ab6&p=17495985#post17495985

Google

don't have to pay for a backup service/ extra hard drives etc.

Copyright infringement is always a crime but fair use is never a Copyright Infringement

09-12-2010, 05:29 PM    #299

**johnsteele**
Registered User

Industry Role:
Join Date: Sep 2010
Location: Chicago
Posts: 12

**Hello there**

As the attorney that has filed the actual lawsuits, I can say that most of the negative comments on this post miss the point of what we are trying to do. I wish to make a couple quick points:

1. We are not looking to end piracy. That will never happen.

2. We are trying to get some "lost" money back to content producers on a contingency basis. If my firm is full of idiots that cannot accomplish this task then our clients are not a dime.

3. I am not trying to push this solution on anyone who would rather not pursue illegal downloaders. If a content producer is comfortable with writing off illegal downloads as a cost of doing business, I respect that.

4. With respect to the comment that most down loaders don't know its illegal, I can't help but wonder if that commenter is serious. Besides, ignorance of the law is no excuse.

5. For the 95% of the people on here that think what we are trying to do is a good idea, thanks!

John Steele

Steele | Hansmeier

09-12-2010, 05:31 PM    #300

chronig

Quote:

Quote:



story  Bookmarks  Tools  Help

http://gfy.com/showthread.php?t=985302&page=7

Getting Started    Latest Headlines

tspeed, Grooby File... ✕    XBIZ NEWS: Lightspeed, Grooby F... ✕    ✛

Google

**johnsteele**
Registered User

Industry Role:
Join Date: Sep 2010
Location: Chicago
Posts: 12

09-16-2010, 08:10 AM

#348

**Interesting**

I do not wish to engage in a tit for tat. And perhaps I am not used to the rough and tumble online blog sites, but:

1. Referring to me as Jewish in a derogatory way is offensive. And someone claiming to be an attorney while posting an anti-semitic rant on a public website is not exactly an authority on proper behavior. I would assume most anti-semite bigots know that Steele is not a Jewish name BTW.

2. Referring to down loaders who go through the steps of downloading a bittorrent client, going to a bittorrent site, downloading an entire movie, and playing it on their computer as "innocent" is simply not credible, IMHO. Maybe a jury would disagree. To paraphrase, John Madden, that's why we go to trial.

3. 99.3% of all bittorrent date shared is illegal according to one study.

4. We work on contingency, which means that we have NEVER received a dime from Steve Lightspeed nor any of our clients. Not sure how I could "take their money".

5. Federal Court is a bit different than a church. I would submit that federal judges do not have a separate set of constitutional rights for Plaintiffs depending on a judge's moral beliefs. Too many bad movies out there created this misconception.

6. Violating a copyright is wrong. You can justify anything, from speeding to illegal copyright infringement. But thankfully in the court of law, excuses do not rise to affirmative defenses. That is why the US's criminal conviction rate is over 95%.

7. I am no expert on all things related to porn, but I find it hard to believe that a 'tube' site that has hundreds or thousands of copyrighted items placed on their site every day is receiving advice from the 'top anti-piracy law firm in the country that everything is a-ok. If so, I am mistaken.

I do not wish to insult or attack anyone on this site and I am only giving my thoughts on these issues.

Quote

story  Bookmarks  Tools  Help

http://gfy.com/showthread.php?t=985302&page=2

etting Started  📂 Latest Headlines

htspeed, Grooby F... ×    XBIZ NEWS: Lightspeed, Grooby File... ×    ✛

☆  ▾    🔍 ▾ Google



☐ 09-04-2010, 10:21 AM                                                                                    #81

**Robbie**
Too lazy to set a custom title

Industry Role:
Join Date: Aug 2002
Location: Vegas
Posts: 10,656

Quote:

> Originally Posted by **DamianJ** ✉
> Actually the RIAA STOPPED attempting to sue the individuals they claim were sharing files, back in 2008 because it was costing too much time and generating a huge loss for them.

Fortunately it's not that way at all for us. Since porn is still "bad", it's been very, very easy to get this done. Folks don't want to be "outed" for their porn habits. When they get these letters from our attorneys they pay up quick.

And it doesn't cost me a dime and there is no "loss". Only profit. We are doing a 60/40 split with the attorneys. I get 60. We set the settlement fee at exactly the price point that it will cost the person more to fight than to settle.

This ain't that hard and it's making me back the money I've lost over the last couple of years. And it's going to start happening a lot.

When you get that letter from my attorney you'll have the choice of getting your own attorney and facing us in court...which is more expensive than paying the settlement. And if you fight it, it's not only gonna cost you more money...but it's going to give you the nice extra bonus of your wife, kids, neighbors, co-workers, etc. finding out ALL about your dirty little porn habits that you want to keep private.

Watch as everyone gets on board with this. If you are a content producer, you need to be doing this too. It's so simple and so effective it's ridiculous. And you are not out of pocket one thin dime. It's all profit.

-Robbie
Claudia-Marie.Com
SOLO SLUT CASH

🖼️🖼️🖼️🖼️                                                                         ✉️ Quote

☐ 09-04-2010, 11:01 AM                                                                                    #82

**seňeta**
Registered User

Robbie has an excellent point in that downloading porn is something that most people won't want broadcast. Even though on the surface porn seems to be more accepted in the mainstream world in the past, to a huge portion of America, it is still for pervers. And there is a world of difference in being outted for illegally obtaining the new Katy Perry tune and being outted for d/l'ing a copy of 'Barely Legal Schoolgirl in Midget Tranny Bukake Paradise'.

It's hush money, and I LOVE it.



story   Bookmarks   Tools   Help

Getting Started   Latest Headlines   🔗 http://gfy.com/showthread.php?t=985302

htspeed, Grooby File ...

**Robbie**
Too lazy to set a custom title

■ 09-04-2010, 03:31 AM

Industry Role:
Join Date: Aug 2002
Location: Vegas
Posts: 10,657

Quote:

Originally Posted by **marketsmart** ✉
*no they are not....*

*although i support your cause, you obviously have now idea how this works...*

*your efforts would be better spent producing new content and protecting it.....* 😊

No, you're wrong.

I'm currently making a 60/40 split on nailing surfers uploading our stuff. Piracy is turning out to be a nice little revenue stream after all. GroobyBucks and Lightspeed are following in the footsteps of a few others who have now figured out how to put a hurt on it.

I'm the one laughing all the way to the bank. The 60/40 split with the lawyers is nice for me. Way better than watching assholes make 100% with stolen content for damn sure. And it's padding my bank account. 😜

-Robbie
Claudia-Marie.Com
SOLO SLUT CASH

🔲 Quote

#41

**Dirty Dane**
Registered User

■ 09-04-2010, 03:53 AM

That's great Steve. Good luck with it.

🔲 Quote

#42