FILED
JUL 19 2012 JH
July 19, 2012
THOMAS G. BRUTON
CLERK, U S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PACIFIC CENUTRY INTERNATIONAL, LTD. <br><br> Plaintiff, <br><br> vs. <br><br> DOES 1 - 31 <br><br> Defendants | Case No.: 1:11-cv-09064 <br><br> Judge: Honorable Harry D. Leinenweber <br> Magistrate Judge: Hon. Morton Denlow <br><br> OMNIBUS MOTION TO SEVER DEFENDANTS AND/OR QUASH THE SUBPOENA AND/OR ISSUE A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW |

## JOHN DOE'S OMNIBUS MOTION TO SEVER DEFENDANTS AND/OR QUASH THE SUBPOENA AND/OR ISSUE A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

COMES NOW defendant, John Doe ("Defendant"), who hereby files this Omnibus Motion and moves this Court to: (first) sever and dismiss the defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21; and/or (second) quash the subpoena directed at the Internet Service Providers (hereinafter "the ISPs" or "ISP") and/or issue a protective order limiting the disclosures by the ISPs pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45. This court should grant the relief requested. In support, the Defendant relies on the following Memorandum of Law:

### I. ARGUMENT

Plaintiff is improperly utilizing this Court's procedures to extort settlements from potentially innocent individuals. Plaintiff aims to harass potentially innocent individuals with threats of statutory damages and legal fees and hopes to exploit the embarrassment associated with being named as defendants in actions for copyright infringement of explicit pornographic material.

Concerns about such abusive settlement tactics have been expressed by many Courts addressing cases concerning pornographic movie infringement. See e.g., *On The Cheap, LLC, Does 1-5011*, No. 10-4472-BZ, 2011 WL 4018258 at *11 (N.D. Cal. Sept. 6 2011) (stating that settlement tactics result in defendants being left with a "decision to either accept plaintiff's demand or incur significant expense to defend themselves" and such does not "comport with the 'principles of fundamental fairness"). Such concerns are well summarized in a nearly identical recent case:

> These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.

Honorable Otis D. Wright continues by stating:

> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what **is essentially an extortion scheme,** for a case that plaintiff has no intention of bringing to trial.

*Malibu Media, LLC v. Does 1-10*, No. 2:12-cv-3623-ODW(PJWx) at *7 (C.D. Cal. June 27 2012) (order severing Does 2-10 (emphasis added)).

Specifically, Plaintiff has misjoined 31 unrelated Defendants and has caused the issuance of a Subpoena prior to rule 26(f) conference seeking protected information as to John Doe's identity and anonymous online activities. Also, this Court should sever and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21. In the alternative, this Court should quash the subpoena directed at the ISPS and/or issue a protective order further limiting the disclosures by the ISPs pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45.

//
//

### A. Plaintiff's Joinder of 31 Unrelated Defendants in this Action is Improper

Plaintiff has improperly joined 31 unrelated individuals as Defendants to this lawsuit. Federal Rule of Civil Procedure 20(a)(2) provides that defendants may only be joined in a single action if:

(A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) Any question of law or fact common to all defendants will arise in the action.

"[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes thereby eliminating unnecessary lawsuits." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 714, 866 86, S.Ct. 1130, 16 L.Ed.2d 218 (1966). "The Federal Rules, however, also recognize countervailing considerations to judicial economy." *Alexander*, 207 F.3d at 1324. A motion for joinder may be denied if it would result in "prejudice, expense or delay." 7 Charles Alan Wright, et. al., Federal Practice and Procedure § 1652, at 396 (3d ed. 2001). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray*, 293 F.3d 1252. 1253 (11th Cir. 2002).

Numerous courts have found that alleged copyright infringement through the use of BitTorrent Protocol is insufficient to sustain permissive joinder. This has been demonstrated in numerous nearly identical cases.[1]

//
//

---

[1] See *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Third Degree Films v. Does 1-3577.* No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec 19, 2011) (same); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec 5, 2011) (same); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op. 2011 WL 4915551 (E.D. Va. Oct 17, 2011) (same); *K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011)(same);

### 1. Plaintiff's Claims Do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences"

Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol by the individual Defendants is sufficient to sustain their joinder in this action. However, an individual Defendant's alleged use of BitTorrent Protocol does not necessitate the inference that he or she had any interaction with any of the other 30 Defendants in this case. A nearly identical case recently decided in the Southern District of Florida:

> Under the BitTorrent Protocol, it is not necessary that each of the Does ... participated in or contributed to the downloading of each other's copies of the work at issue, or even participated in or contributed to the downloading by any of the [other] Does ... Any "pieces" of the work copies or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, -F.R.D.-, No. 1:11-CV-21567-KMM, 2011 WL 5190106, at *2 (S.D. Fla. Nov. 1, 2011) (quoting *Hard Drive Prods., Inc. v. Does 1-188*, -F.Supp.2d.-, No. C-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011)).

Numerous Courts have reasoned that John Doe defendants in analogous lawsuits were improperly joined based on the large time span between each defendant's alleged sharing of the file. *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939-TWT, slip, op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-02941-CAP, at 6(N.D. Ga. Dec. 5, 2011) (time span of more than 2 months); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (time span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, -F.R.D-, No. 1:11-CV-21525-KMM, 2011 WL 5190048, at *2-4 (S.D. Fla. Nov. 1. 2011) (time span of two months); *Hard Drive Prods., Inc.*, 2011 WL 3740473, at *13 (time span of **two weeks** [emphasis added]).

In *Raw Films, Inc.*, the court found that "[d]ownloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." 2011 WL 6840590, at *2; see also *K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 4 (N.D.

Ga. Dec. 5, 2011) (order granting motion to sever). In explanation of that finding, the court reasoned that:

> [T]he differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert. While the Defendants may have used the same peer-to-peer system, the Complaint does not allege that they were sharing with each other. For example, Doe 4, who is alleged to have been in the swarm on July 13, 2011, is unlikely to have in the swarm at the same time as Doe 5, who is alleged to have been in the swarm on March 4, 2011.

*Id.* At *2; see also *K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec 5, 2011).

In this case, Plaintiff's Complaint hollowly alleges that Defendants' allege infringement was part of the same "series of transactions" or occurrences. However, Exhibit A to the Complaint shows that these transactions or occurrences happened throughout a time span of almost 5 weeks. (*See* Compl. Ex. A).

Although the Court, at this stage, holds the opinion that the participation in a single "swarm" sufficiently alleges that they were involved in "a series of transactions" to warrant joinder, there are many technical issues with such allegations. Exhibit A to the Complaint only lists single points in time across a 5 week time span. We do not know if someone was connected to the swarm for 1 minute or for 1 year. The lack of any defined ranges of time any individual anonymous member was connected to the swarm, and if any of these ranges overlap between Defendants is insufficient in alleging the anonymous defendants participated in the same swarm. Plaintiff has also insufficiently provided any data concerning the health of the swarm across any time span. We do not know if the swarm consisted of millions of members or just each individual Defendant sharing files with the Plaintiff's software. This is a crucial number in both determining the possibility that any 2 anonymous members ever connected to each other and that the swarm has a persistent membership across the range of time the anonymous defendants connected. The membership of a swarm changes constantly as members connect and disconnect and it is not uncommon that the entire membership of the swarm is replaced throughout a day. It is entirely possible that the swarm John Doe #1 (24.1.182.247) connected to on 11-30-2011 consists of an entirely different membership than John Doe #2 (24.12.97.62) on 12-06-2011 and

that no connection between John Doe #1 and John Doe #2 could be established given any "series of transactions or occurrences".

Plaintiff's allegations that Defendants committed the same type of violation in the same way simply does not equate to participation in the same transaction, occurrence, or series of transaction or occurrences. *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WK 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is sufficient to warrant the severance of the Defendants.

### 2. Joinder Will Prejudice the Defendants Moving Forward and Result in a Lack of Judicial Economy

"Among the factors to be considered by the court is exercising its discretion under Rule 21 are whether... judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D. Fla. Feb 12, 2012); *see also*, 7 Charles Alan Wright, et al., Federal Practice and Procedure 1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

Joinder of 31 unrelated Defendants in this case will result in severe practical problems moving forward. The Defendants, proceeding both *pro se* and through counsel, will likely assert different legal and factual defenses that apply to them particularly, or only a fraction of the 31 Defendants. Based on individual Defendant's circumstances, he or she may be asserting legal defenses based on: copyright invalidity, de minimums copying, fair use, grant of permission or license, copyright misuse, acquiescence, unclean hands, and/or estoppel. Further, the individual Defendants are likely to put forward a variety of factual defenses and will identify different witnesses. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, no. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

As the case proceeds, Plaintiff is likely to make further discovery requests against each individual Defendant that will further increase complexity and cost. This is the exact situation in which the Northern District of California found itself when it failed to sever 52 defendants in a similar case:

> [Plaintiff] would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and computers of those sharing [the subscriber's] internet network.... Presumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing [the subscriber's] internet access, would be fair game. Beyond such an inspection, [Plaintiff] might require still more discovery, including interrogatories, documents requests and even depositions.

*Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG, at 4 (N.D. Cal. Sept. 13, 2011) (order denying further discovery).

The courthouse circus which will likely ensue if the Defendants are not severed will result in inefficiency for the Court and prejudice the Defendants moving forward. See, e.g., *Pac. Century Int'l Ltd. V Does 1-101*, No. C-11-02533-(DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) ("An internet based copyright infringement case with at least 101 defendants would prove a **logistical nightmare**" (emphasis added)); *Bridgeport Music Inc. v . 11C Music*, 202 F.R.D. 229, 233 (M.D. Tenn, 2001) ("If joined in one action, hundreds of Defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them – all of which they must pay their attorney to review"). To prevent prejudicing the Defendants and maximize judicial economy, this Court should dismiss the Defendants from this case.

### B. Plaintiff's Subpoena is Improper and Must be Quashed

A Rule 45 subpoena must fall within the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1), which limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party in the pending action and is reasonably calculated to lead to the discovery of admissible evidence." Fed. R. C. P. 26(b)(1). If a subpoena falls outside the scope of

permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served, or a party challenging the relevancy of, or claiming a privacy interest in, the records sought. See Fed. R. Civ. P.45(c)(3).

This Court, in its Order Granting Plaintiff's Motion for Leave to take Discovery Prior to Rule 26(f) Conference, explicitly recognized Defendants' right to challenge the Subpoena. The subpoenas issued to the ISPS should be quashed pursuant to Rule 26 of the Federal Rules of Civil Procedure because Defendant: (1) challenges the legal sufficiency and legitimacy regarding Plaintiff's request for early discovery that produced the Subpoena, for which Defendant was never given notice or an opportunity to be heard, and (2) claims a privacy interest in the records sought.

### 1. Defendant Objects to the Early Discovery that Plaintiff Seeks Through its Subpoena

Discovery is normally barred prior to the Rule 26(f) conference. See Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except... when authorized by these rules, by stipulation of by court order"). Courts apply this rule even when considering subpoenas issued to non-parties. See *Crutcher v. Fidelity Nat'l Ins. Co.*, Civ. No. 06-5273, 2007 WK 430655, *2 (E.D. La. Feb. 5, 2007).

Plaintiff has misled this Court by suggesting that it will be able to identify the Defendants through issuance of subpoenas to the ISPS. In an analogous case *Digital Sin, Inc. vs John Does 1-176* No 1:12-CV-00126-AJN, where District Judge Alison J. Nathan noted in the Opinion And Order Permitting Limited Expedited Discovery Pursuant To A Protective Order.

> Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son... or the boyfriend if it's a lady" (1-17-12 Tr. At 16).

ID. There are no distinct differences between this case and *Digital Sin, Inc. vs. John Does 1-176* that would indicate that the collateral damage would be any less. An IP address can only identify the subscriber to an ISP; it does not identify the specific identity of the person that actually engaged in the alleged infringing activities. To successfully identify the claimed infringers, Plaintiff would need extensive additional information that cannot be gleaned from information requested by the

1  Subpoena. Indeed, Plaintiff's inaccurate portrayal of the facts required to identify infringers was
2  exposed in a similar lawsuit recently, *Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG (N.D. Cal.
3  Sept. 13, 2011) (order denying further discovery; order to show cause).
4        In that case, after issuing a substantially identical subpoena and representing to the court
5  that each IP address corresponded to a defendant, the plaintiff was forced to admit that the
6  subscriber information linked to an IP number was legally insufficient to identify a defendant and
7  really just the starting point for a far more invasive investigation. In rejecting that plaintiff's
8  attempt to expand its discovery beyond its initial representations, the court quoted the key
9  admissions to the plaintiff's argument as follows:

> While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, or any number of other individual who had direct access to Subscribers network.
> [Accordingly:]
> Plaintiff plans to request a limited inspection of Subscriber's electronically stored information and tangible things, such as Subscriber's computer and the computers of those sharing [the subscriber's] Internet network, for the purpose of finding the individual that unlawfully violated Plaintiff's copyrighted works by uploading/downloading the file referenced BitTorrent, or to see whether such information has since been erased contrary to instructions by Verizon Online and Plaintiff's attorneys.

18  *Id.* At 4 (withdrawing its prior order granting limited early discovery and denying further requests
19  because "[presumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence,
20  and perhaps any residence of any neighbor, houseguest or other sharing [the subscriber's] internet
21  access would be fair game"])(internal quotes and citations omitted). The fact that subscriber
22  information obtained from an IP address is insufficient to identify the infringer is illustrated by a
23  debacle that occurred in Evansville, IN. recently where a SWAT team raided the incorrect
24  residence mistakenly lead via IP address. ( Nate Anderson, "SWAT team throws flashbangs, raids
25  wrong home due to open WiFi network." Ars Technica June 28, 2012 <
26  http://arstechnica.com/tech-policy/2012/06/swat-team-throws-flashbangs-raids-wrong-home-due-
27  to-open-wifi-network/>).

In *VPR Int'l v. Does 1-1017*, the court came to a similar conclusion and denies the plaintiff's motion for expedited discovery. *VPR, Int'l*, 2:11-CV-02068-HAB-DGB (CD. Ill. April 29. 2011). The court noted that subscriber information requested from an ISPS would be insufficient to identify an infringer who "might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id.* At 2. To further illustrate this fact, the court noted an instance involving a raid by federal agents on a home that was linked to downloaded child pornography.

> The identity and location of the subscriber were provided by the ISPS. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents return the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York).

Id. At 2(citing Carolyn Thompson, Bizarre Pronography Raid Underscores Wi-Fi Privacy Risks (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/ ). The court opined as to the plaintiff's true motives. Id. At 3 ("Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.").

### 2. The Subpoena Issued by Plaintiff Seeks to Discover Protected Information and Violates the United States Constitution.

The essence of the discovery sought through the subpoena at issue in this case is the identity of individuals engaged in anonymous online communication.[2] Accordingly, the First Amendment applies and Plaintiff must demonstrate its legitimated need for the information before being able to overcome the right to engage in anonymous speech. *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C., 2009); see generally *Reno v. American Civil Liberties Union*, 521

---

[2] Additionally, Defendant maintains a privacy interest in his or her identifying information on file with the ISPS and claims that it is protected information in and of itself. See *Transcor, Inc v. Firney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) (As bank customer, defendant had a personal right with respect to its bank account records at banks which were subject of subpoenas duces tecum issued by plaintiff, and that right gave defendant standing to move to quash the subpoenas); *Broadcort Capital Corp. v. Flagler Securities, Inc.* 149 F.R.D. 626 (Nonparty and defendant in securities action had standing to object to subpoena duces tecum of telephone company records based on claim that records were privileged, despite contention that only the served party could object).

U.S. 844, 870 (1997); *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 341-43 (1995). As noted in *Sinclair*, individuals engaged in anonymous online communication may be identified only if Plaintiff meets a multi-factor test designated to balance the right to seek redress for legitimate claims against the fundamental right to communicate anonymously. 596 F. Supp. 2d at 132. In particular, Plaintiff must come forward with prima facie evidence that each particular Defendant infringed the Plaintiff's rights before the Defendant's identity is disclosed. *Id.* Here, Plaintiff fails to address the First Amendment constitutional issues raised by Plaintiff's attack on the Defendants' anonymous speech, and has even failed to create a prima facie record to support its allegations that any of the Defendants engaged in or contributed to copyright infringement.

The only factual support that Plaintiff provides for the allegations in the Complaint are a list of IP addresses associated with devices connected to the internet from which it is alleged infringing activity took place and a declaration of Peter Hansmeier in support of plaintiff's motion who names himself as a "technician" at Media Copyright Group, LLC ("MCG"). There is no question that the list of IP addresses must be gathered impartially and accurately as being named as a defendant in this Case places great burden on the defendant. Plaintiff has provided no support that this information was gathered in such a manner and furthermore there are indications that Peter Hansmeier's declaration was made to mislead the court.

One important fact omitted by the Plaintiff is that Media Copyright Group LLC is no longer an active business and was not an active business when the declaration was filed. Media Copyright Group LLC filed a Notice of Dissolution on 12/22/2011 in the State of Minnesota and the company was terminated that same day. The Declaration is signed by Peter Hansmeier and Executed on 12/22/2011 in Minneapolis, MN. Simply, Media Copyright Group LLC. did not exist on 12/22/2011. More interestingly Peter Hansmeier perjures himself in declaring that "MCG **continues** to monitor on a **real time basis** the unlawful duplication and distribution"(Declaration of Peter Hansmeier, Statement 24 (emphasis added)). It is impossible for MCG to continue monitoring on and past 12/22/2011 since MCG does not exist on 12/22/2011.

Additionally, the Declaration by Peter Hansmeier fails to detail any independent testing or certification that has been done to their software. The Declaration also omits crucial information such as false positive rates and error rates that software of this type is normally tested for. The Declaration would have this Court believe that MCG's highly technical methods used to identify IP addresses from which allegedly infringing activity took place are highly accurate, but recent studies have shown that similar software produces a large number of false positives. A recent study performed by the Department of Computer Science and Engineering at the University of Washington determined that "copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of DMCA takedown notices for machines under [their] control at the University of Washington that were not downloading or sharing any content." Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks –or- Why My Printer Received a DMCA Takedown Notice*, 3rd USENDC Workshop on Hot Topics in Security 2008, (July 29, 2008) http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf. Specifically the article concludes:

> [W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

*Id.*

Also, and as noted above, the Declaration makes no accounting for actions engaged in by third parties using Defendants' networks. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works.... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

Furthermore, Peter Hansmeier has misled the court in claiming that "there is no central server that can be targeted for purposes of stemming the tide of piracy". (Declaration of Peter

Hansmeier, Statement 11). There is a central server; the BitTorrent tracker which connects peers and seeders together as described by Mr. Hansmeier himself earlier in the Declaration (Declaration of Peter Hansmeier, Statement 8). Peter Hansmeier has also misled the court in claiming that "An IP address is a unique number that is assigned to Internet users by an Internet service provider at a given date and time." (Declaration of Peter Hansmeier, Statement 16). An IP address is not a unique number that is assigned to an Internet user but is a routing number used for communication between networked devices using the IP protocol. It is unclear whether Mr. Hansmeier is purposefully misleading the court or is unaware what an IP address actually is or how a BitTorrent tracker works.

Further investigation into Peter Hansmeier reveals that Mr. Hansmeier does not appear to have any professional certification in forensic software from any appropriate accreditation board and is calling himself a "technician" only in a colloquial sense. The directory at the Global Information Assurance Certification board ("GIAC") has no one named Hansmeier certified as a GIAC Certified Forensic Analyst ("GCFA"), GIAC Certified Forensic Examiner ("GCFE"), or even certified in GIAC Legal Issues in Information Technology & Security ("GLEG").[3] Mr. Hansmeier also does not have Certified Computer Examiner (CCE) certification with the International Society of Forensic Computer Examiners (ISFCE), does not have Certified Forensic Computer Examiner (CFCE) certification from the Forensic Specialities Accreditation Board (FSAB) through the International Association of Computer Investigative Specialists (IACIS), nor does he have certification as a Certified Information Systems Auditor (CISA) from the Information Systems Audit and Control Association (ISACA). No support is provided by either the Plaintiff or by Peter Hansmeier that anyone at MCG has any accreditation in doing computer forensic work at the time the IP addresses of the defendants were gathered.

Additional investigation into Media Copyright Group LLC has revealed that the impartiality to gathering of IP addresses by MCG is questionable as Plaintiff has failed to disclose that Peter Hansmeier and subsequently Media Copyright Group LLC of which Peter Hansmeier is

---

[3] The GIAC directory is publicly searchable at http://www.giac.org/certified-professionals/directory

the registered manager of when the company existed has a personal relationship with Plaintiff's counsel. The registered agent of Media Copyright Group LLC is Paul Hansmeier who is a relative of Peter Hansmeier. Paul Hansmeier was a partner of Steele|Hansmeier PLLC with John Steele. Steele|Hansmeier PLLC was dissolved on January 13th, 2012 and was reorganized into Prenda Law Inc. Furthermore John Steele now operates from 161 N. Clark St. Suite 3200, Chicago, IL 60601 (http://steele-law.com) which is the same address as Prenda Law Inc. This unclear relationship and obfuscating renaming indicate that the impartiality of the IP address gathering done by MCG is questionable.

Plaintiff is attempting to obtain Defendant's Constitutionally protected information without even being able to create a prima facie record to support its allegations that John Doe, or any of the Defendants, engaged in or contributed to copyright infringement. As such, the Subpoena should be quashed.

Furthermore, Peter Hansmeier's Declaration on behalf of Media Copyright Group, LLC should be dismissed as Media Copyright Group, LLC did not exist when the Declaration was made and Peter Hansmeier lacks any accreditation and fails to demonstrate appropriate technical expertise to support his claims.

### III. CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining Defendants' contact information for use in extracting large settlements that the formalities of the legal process and privacy interest for the affected individuals.

Plaintiff has repeatedly misled the court in its representations supporting joinder of the Defendants and obtaining early discovery. MCG is not an active company and the Declarant Peter Hansmeier's lack of accreditation, lack of a demonstration of technical knowledge, and a lack of any testing data supporting the accuracy of MCG's software destroy any credibility to the Declaration and other factual support produced by Peter Hansmeier and his company MCG. Plaintiff's joinder of Defendants is improper because Plaintiff's claims do not arise out of the same transaction, occurrence, or series thereof, and it prejudices the Defendant while undermining the judicial economy. Plaintiff's Subpoena should be quashed because Plaintiff has misled this Court

in obtaining an Order granting early discovery, seeks protected information, and violates the United States Constitution.

WHEREFORE, premises, considered, John Doe respectfully requests that this Court:

(A) Sever and dismiss all Defendants pursuant to Federal Rule of Civil Procedure 21 and require Plaintiff to bring individual actions against each Defendant, if it chooses to do so, in the appropriate venue;

(B) Quash the Subpoenas to the ISPS pursuant to Federal Rule of Civil Procedure 26;

(C) Enter a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure, staying all discovery in this case (and the use of any information already obtained by the Plaintiffs in discovery) until each time as the interests of John Does can be heard anonymously and considered by a court of proper jurisdiction;

(D) Grant such other and further relief to John Does as may justly be entitled.

Dated this 10th day of July, 2012

Respectfully Submitted,

*/s/ John Doe*
John Doe
*Pro Se*
Johndoe09064@gmail.com

# CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the foregoing Motion was served as follows:

| Via First Class Mail<br>United States District Court<br>Northern District of Illinois<br>Everett McKinley Dirksen<br>United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 | **Via Facsimile: (866) 947-5587**<br>Comcast Legal Response Center<br>NE&TO<br>650 Centerton Road<br>Moorestownm NJ 08057<br>Tel: (866) 947-8572<br>Fax: (866) 947-5587<br>*Interested/Subpoenaed Party* |
|---|---|
| **Via Facsimile (312) 893-5677**<br>Prenda Law, Inc.<br>161 N. Clark St. Suite 3200<br>Chicago, IL 60601<br>Tel: (312) 880-9160<br>Fax: (312) 893-5677<br>*Attorney for Plaintiff* | |

This 10th day of July 2012

/s/ John Doe

John Doe
Johndoe09064@gmail.com